FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
3/28/2025
JEFFREY P. COLWELL, CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 25-mc-30-REB

JOHN DOE 1, JOHN DOE 2, JOHN DOE 3,
JOHN DOE 4, JOHN DOE 5, JOHN DOE 6,
JOHN DOE 7, JOHN DOE 8, JOHN DOE 9,
JOHN DOE 10, JOHN DOE 11, JOHN DOE
12, JOHN DOE 13, and JOHN DOE 14
individually and on behalf of all others similarly
situated,

    Plaintiff(s),

v.

THE UNIVERSITY OF SAN FRANCISCO,
ANTHONY N. (AKA NINO) GIARRATANO,
and TROY NAKAMURA,

    Defendant(s).

---

ROBERT "TAGG" BOZIED,

    Non-Party.

---

**MOTION TO COMPEL NON-PARTY ROBERT "TAGG" BOZIED'S
PRODUCTION OF SUBPOENAED DOCUMENTS**

---

    Plaintiffs John Doe 1-6, 8-14[1] move under Federal Rules of Civil Procedure 37(a) and 45(d)(2)(B)(i) to compel non-party Robert "Tagg" Bozied ("Mr. Bozied") to produce documents responsive to Document Requests Nos. 1-3 and 5-6 attached to the Subpoena served on Mr. Bozied on September 10, 2024.[2]

    Plaintiffs are former baseball players at the University of San Francisco ("USF"). In the underlying action, Plaintiffs sued USF and two of their former coaches (Anthony

---

[1] The underlying lawsuit is *John Does 1-14 v. University of San Francisco, et al.*, Case No. 3:22-cv-1559-LB (N.D. Cal).

[2] Decl. of M. von Klemperer, **Ex. A** (Bozied Subpoena), **Ex. B** (Affidavit of Service).

"Nino" Giarratano and Troy Nakamura) for violations of Title IX, the California Education Code, and state common law.

Mr. Bozied is another former USF baseball player, a close confidant of Defendant Giarratano, and an important witness. Mr. Bozied has been identified by two of the three Defendants as an individual they may rely on to support their defenses, and he even started a website and several social media accounts devoted to disputing the Plaintiffs' allegations, in which he quotes from interviews he purportedly conducted of other witnesses, including former players.

Plaintiffs served Mr. Bozied with a narrowly tailored subpoena for documents concerning the three Defendants and Mr. Bozied's website and social media accounts on September 10, 2024. Mr. Bozied objected in full (with copied and pasted boilerplate objections) to each of Plaintiffs' requests and then ignored numerous efforts from Plaintiffs to contact him. After Plaintiffs threatened to initiate an action to enforce their subpoena, Mr. Bozied finally responded to an email, and Plaintiffs' counsel was able able to confer with Mr. Bozied by phone on February 5, 2025. Plaintiffs' counsel walked Mr. Bozied through the Subpoena, explained his obligations to search for and produce responsive documents, and even offered to provide Mr. Bozied with any technical assistance he required.

But Mr. Bozied has, once again, gone radio silent, ignoring numerous follow-up communications from Plaintiffs. Despite receiving Plaintiffs' Subpoena over six months ago, to date, Mr. Bozied has not produced a single document.

Mr. Bozied's conduct leaves little doubt that he has no intention of complying with Plaintiffs' Subpoena absent a court order. Plaintiffs respectfully request that the Court grant this motion, and order Mr. Bozied to conduct a thorough search and produce all documents responsive to Document Requests Nos. 1-3, 5-6 within two weeks.

Pursuant to D.C.COLO.LCivR 7.1(a) and Fed. R. Civ. P. 37(a)(1), Plaintiffs certify that they have made reasonable good faith efforts to confer with Mr. Bozied in an effort to resolve this dispute.

2

I. **FACTUAL BACKGROUND**

   a. **Underlying Lawsuit**

This Motion arises from a lawsuit filed in the Northern District of California by former Division I baseball players, alleging that, over the course of two decades, the University of San Francisco knew that its head baseball coach, Anthony "Nino" Giarratano ("Giarratano"), and assistant baseball coach, Troy Nakamura ("Nakamura") (the three, collectively, "Defendants") created and maintained an emotionally and sexually abusive environment on USF's baseball team. ECF No. 133, Third Amended Complaint, *John Does 1-14 v. University of San Francisco, et al.,* Case No. 3:22-cv-1559-LB (N.D. Cal). The Court granted Plaintiffs' motion to proceed anonymously, finding that publicly revealing Plaintiffs' "identities could cause mental or emotional harm and possible retaliation in the community." ECF No. 63, Order Granting Mot. to Proceed Anonymously, *John Does 1-14 v. University of San Francisco, et al.,* Case No. 3:22-cv-1559-LB (N.D. Cal).

Plaintiffs bring claims for, *inter alia*, Title IX discrimination, Title IX retaliation, violations of the California Education Code, negligence, and negligent supervision and retention of Giarratano and Nakamura. Plaintiffs allege a concerted pattern of sexual and psychological misconduct. This included Nakamura repeatedly exposing his genitalia to baseball players on the baseball field, commenting on players' genitalia, engaging in sexualized skits, and discussing his sexual desires for female students. *See e.g.,* ECF No. 133 ¶ 3-5. Giarratano encouraged and participated in Nakamura's behavior, and when players refused to participate or expressed any disagreement with this sexualized culture, Nakamura and Giarratano ("the Coaches") would retaliate against them, including psychologically abusing players and blackballing them to make it impossible for them to transfer and play at other Division I schools. *Id.* at ¶ 5. The conduct was so abhorrent that several players contemplated suicide, *id.* at ¶ 2, while others fled the team. *Id.* at ¶ 7. All have been left with severe trauma. Year after year for over two decades, USF failed to stop the abuse, even after Giarratano and Nakamura's misconduct prompted numerous complaints to USF. *Id.* at ¶ 6.

### b. Mr. Robert "Tagg" Bozied's Role in the Underlying Litigation

Mr. Robert "Tagg" Bozied played baseball at USF from 1998-2001 and, from 2002-2012, worked with USF's baseball team alongside Giarratano and Nakamura.

Mr. Bozied is Giarratano's close confidant. After USF fired Giarratano for misconduct related to this case, Mr. Bozied worked tirelessly to support Giarratano and dispute the claims of the Plaintiffs in this lawsuit.[3] This work includes:

- Starting a website and several social media accounts entitled "We Support Coach G" expressly devoted to disputing the Plaintiffs' allegations;[4]
- Interviewing at least eight former USF baseball players in an effort to manufacture evidence disproving the Plaintiffs' allegations;[5][6]
- Working with a public relations specialist to craft a public narrative in support of Giarratano;[7]
- Writing a series of articles in conjunction with digital media consultancy MightyHive intended to support Giarratano, dispute the credibility of Plaintiffs, and attack USF and its administration for Giarratano's termination;[8]
- Creating a fundraiser to collect money for Giarratano's defense of this lawsuit which has, to date, at least $57,800 raised;[9]
- Traveling from Colorado to California to testify live on behalf of Giarratano in Giarratano's arbitration against USF.[10]

---

[3] Decl. of M. von Klemperer, ¶ 7.
[4] *We Support Coach G*, WESUPPORTCOACHG.COM, https://www.wesupportcoachg.com/; *We Support Coach G*, X, https://x.com/wesupportcoachg?lang=en; *We Support Coach G*, FACEBOOK, https://www.facebook.com/WeSupportCoachG/; *We Support Coach G,* YOUTUBE, https://www.youtube.com/channel/UCA9B_pBaVreEUm4g0p8QmLw; *We Support Coach G-32*, GOFUNDME, https://www.gofundme.com/f/wesupportcoachg
[5] Decl. of M. von Klemperer, ¶ 8.
[6] Mr. Bozied has notes and created transcripts from these interviews. *See* Decl. of M. von Klemperer, ¶ 10.
[7] *Id.*
[8] *See e.g.,* Decl. of M. von Klemperer, ¶ 11.
[9] *We Support Coach G-32*, GOFUNDME, https://www.gofundme.com/f/wesupportcoachg.
[10] Decl. of M. von Klemperer, ¶ 12.

Two of the three Defendants have identified Mr. Bozied in their Initial Disclosures as an individual they may rely on to support their defenses.[11] They have even filed documents from Mr. Bozied's "We Support Coach G" website and social media pages as purported evidence to challenge Plaintiffs' allegations.[12]

### c. Plaintiffs' Subpoena Mr. Bozied; Mr. Bozied Ignores It

Plaintiffs served Mr. Bozied with the Subpoena at his residence in Westminster, Colorado.[13] In relevant part, the Subpoena seeks: communications about the Coaches' misconduct and USF's knowledge of the same and documents regarding the "We Support Coach G" movement, including the websites, social media groups, and internet accounts, created and administered by Mr. Bozied.

Mr. Bozied served written objections on September 23, 2024, objecting in full to every request with copied-and-pasted boilerplate objections.[14] Given that the objections are nearly word-for-word copies of objections served by Giarratano in response to Plaintiffs' document requests in the underlying case, Giarratano's counsel appears to have ghostwritten the objections for Mr. Bozied.[15] Giarratano's counsel, however, did not sign the objections or otherwise indicate that they represent Mr. Bozied.

On October 28, 2024, Plaintiffs contacted Mr. Bozied, via email, explaining their position: because Mr. Bozied has been identified by Defendants as a witness in this case and created and administered the website "WeSupportCoachG," which claims to have information that rebuts the Plaintiffs' allegations, Mr. Bozied has documents and communications that are both relevant and discoverable.[16] In this same email, Plaintiffs

---

[11] Decl. of M. von Klemperer, ¶ 7 & **Ex. G** (Defendants' Initial Disclosures).
[12] *See e.g,*. ECF No. 282-006, Exhibit 4 to the Declaration of Jonathan Baum in Support of Defendant University of San Francisco's Opposition to Plaintiffs' Motion for Class Certification, *John Does 1-14 v. University of San Francisco, et al.,* Case No. 3:22-cv-1559-LB (N.D. Cal); ECF No. 296-013-014, Exhibits M-N to the Amended Declaration of Katherine O'Neal in Support of Defendant Giarratano's Opposition to Plaintiffs' Motion for Class Certification, *John Does 1-14 v. University of San Francisco, et al.,* Case No. 3:22-cv-1559-LB (N.D. Cal).
[13] Decl. of M. von Klemperer, **Ex. A**, **Ex. B**.
[14] Decl. of M. von Klemperer, **Ex. C** (Bozied Response).
[15] Decl. of M. von Klemperer ¶ 4.
[16] Decl. of M. von Klemperer, **Ex. D** (Email Thread re Subpoena Between Bozied and Plaintiffs' Counsel)

5

attempted to organize a call to discuss the Subpoena and Mr. Bozied's objections without necessitating involvement from the court.

When Mr. Bozied failed to respond to the October 28 email, Plaintiffs sent Mr. Bozied a letter, via certified mail, containing materially the same information on November 6, 2024.[17] Mr. Bozied refused to sign for the certified letter, and it was returned undelivered.[18]

Plaintiffs then emailed Mr. Bozied again explaining that they intended to initiate litigation to enforce the subpoena should Mr. Bozied not respond.[19]

On February 5, 2025, Mr. Bozied responded to Plaintiffs' emails and agreed to confer about the Subpoena. This conferral was memorialized in Plaintiffs' February 18, 2025, email: "As we discussed, Plaintiffs seek your communications with anyone concerning the topics listed in Requests 1-3 and any documents regarding the "We Support Coach G" website and social media pages you created, per Request 6." To facilitate the process, Plaintiffs proposed that Mr. Bozied search for communications with specific individuals whom he engaged in responsive communications with, provided Mr. Bozied with technical instructions on how to collect and save any responsive communications, and agreed to a generous production deadline of March 4, 2025.[20]

On March 7, 2025, having received nothing from Mr. Bozied, Plaintiffs followed up, via email, to request that, by March 10, 2025, Mr. Bozied confirm that he has conducted the search for documents and to provide a date certain that Plaintiffs would receive the responsive documents (no later than March 17, 2025). Mr. Bozied never responded, thereby necessitating the present motion.[21]

## II. LEGAL STANDARD

Where a non-party fails to comply with a lawfully served subpoena, the serving party may move the court for the district where compliance is required for an order compelling production. Fed. R. Civ. P. 45(d)(2)(B)(i); Fed. R. Civ. P.37(a)(1), (2), (3)(b)(iv); Fed. R. Civ. P. 34(c) ("a nonparty may be compelled to produce documents").

---

[17] Decl. of M. von Klemperer, **Ex. E** (Bozied Letter).
[18] Decl. of M. von Klemperer, **Ex. F** (Bozied Returned Certification Slip).
[19] Decl. of M. von Klemperer, ¶ 5 & **Ex. D.**
[20] Decl. of M. von Klemperer, **Ex. D.**
[21] *Id.*

6

The scope of discovery to non-parties is the same as that for parties, and is governed by Fed. R. Civ. P. 26(b)(1). *Cannoid v. Entourage Nutritional Distribs.*, Civil Action No. 16- cv-02848-RM-NYW, 2017 U.S. Dist. LEXIS 231892, at *6 (D. Colo. Aug. 22, 2017). Under Rule 26, a party may discover any matter that is relevant to a claim or defense and proportional to the needs of the case. Fed. R. Civ. P 26(b)(1). Relevance—which is broader in the discovery context than at trial—"has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Funds, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

"When the discovery sought appears relevant on its face, or the discovering party has established relevance, the party resisting discovery bears the burden to support its objections." *Gottfried v. Univ. of Colo. Hosp. Auth.*, No. 23-cv-03240-PAB-STV, 2025 U.S. Dist. LEXIS 10449, at *5 (D. Colo. Jan. 21, 2025). Objections to document requests must be stated with specificity. *Cannoid,* 2017 U.S. Dist. LEXIS 231892, *10-11 (an objection that "providing a response to the subpoena is burdensome is equally unavailing as it lacks the specificity necessary for the court to undertake a meaningful analysis pursuant to Rule 26(b)(1)"); *see also Oleson v. Kmart Corp.,* 175 F.R.D. 560, 565 (D. Kan.1997) (the objector "must show specifically how each discovery request is burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden."). "'[B]oilerplate, generalized objections are inadequate and tantamount to not making any objection at all.'" *Bautista v. MVT Services*, Civil Action No. 16-cv-01086-NYW, 2017 U.S. Dist. LEXIS 79752, *14 (D. Colo. Mar. 20, 2017) (quoting *Greystone Constr., Inc. v. Nat'l Fire & Marine Ins. Co.*, No. 07-cv-00066-MSK-CBS, 2008 U.S. Dist. LEXIS 106695, at *15-16 (D. Colo. Mar. 21, 2008).

**III.   ARGUMENT**

It is beyond dispute that Mr. Bozied is an important witness in the underlying case who has engaged in extensive, relevant communications regarding Defendants, Plaintiffs, and the specific allegations at issue. Yet Mr. Bozied refuses to produce a single document and apparently believes he can avoid his obligations simply by ignoring Plaintiffs' counsel's efforts to contact him. An order compelling Mr. Bozied's compliance is essential.

Plaintiffs move to compel responses to only five of the seven Document Requests included with their subpoena: Document Request Nos. 1-3 and 5-6. These requests seek documents and communications Plaintiffs know Mr. Bozied has, and, in large part, that only he has access to.

### i. *Document Requests Nos. 1-3*

Document Request No. 1 asks for all communications between Mr. Bozied and anyone *other than* Giarratano and Nakamura regarding Giarratano or Nakamura, USF's administration and Title IX office, the Plaintiffs, or the USF baseball team.[22] Request Nos. 2 and 3 ask for communications between Mr. Bozied and Giarratano or Nakamura about similar topics.[23]

Based on Mr. Bozied's public postings on the internet, and discovery produced by the parties in the underlying litigation, Mr. Bozied engaged in responsive communications with *at least* a dozen individuals.[24] Indeed, Mr. Bozied interviewed at least eight individuals *about the allegations in the underlying lawsuit*, took notes, and created transcripts of the interviews. He then posted select excerpts from the interviews on his "We Support Coach G" website to attack the credibility and character of the Plaintiffs, including, e.g.[25]:

---

[22] Decl. of M. von Klemperer, **Ex. A.**
[23] *Id.*
[24] Decl. of M. von Klemperer, **Ex. D; Ex. H** (We Support Coach G tweets),
[25] *We're Not John Does for a Reason*, WESUPPORTCOACHG.COM, https://www.wesupportcoachg.com/were-not-john-does-for-a-reason/



Just as Mr. Bozied was identified on two of the three Defendants' Initial Disclosures, Defendants have likewise identified all of the individuals he interviewed on their disclosures, squarely placing their statements about Defendants and Plaintiffs at issue. There is no credible argument that these types of conversations do not meet the "extremely broad" definition of relevance. *Echostar Communs. Corp. v. News Corp. Ltd*., 180 F.R.D. 391, 394 (D. Colo. 1998).

Mr. Bozied has not, and cannot, carry his burden to demonstrate that the requested communications are disproportionate. Mr. Bozied's objections are pure boilerplate: *e.g.*, "vague and ambiguous," "overbroad," "unduly burdensome," not "relevant." Such objections, without more, are insufficient and must be overruled. *Bautista,* 2017 U.S. Dist. LEXIS 79752, at *14.

Mr. Bozied's objections are also meritless. Plaintiffs have gone above and beyond to accommodate and assist Mr. Bozied, even identifying the specific individuals with whom he has had responsive communications, providing technical assistance with his search and production, and offering to help in any other way they can.[26] The fact is, Mr. Bozied could likely run searches of his phone and email account(s), collect any responsive communications, and provide them to Plaintiffs in an afternoon. He has

---

[26] Decl. of M. von Klemperer, **Ex. D.**

certainly failed to provide any evidence to the contrary. *See Cannoid*, 2017 U.S. Dist. LEXIS 231892, at *10-11; *Oleson,* 175 F.R.D. at 565.

Given the lack of any legitimate objection, Mr. Bozied should be compelled to search for and produce documents in response to Plaintiffs' Document Requests 1-3.

ii.   *Document Request Nos. 5 and 6*

Document Request No. 5 seeks documents, other than communications with Giarratano and Nakamura, regarding Giarratano and Nakamura. Document Request No. 6 seeks documents regarding Mr. Bozied's website "We Support Coach G," and the related social media groups, and fundraiser.[27]

Documents responsive to Request No. 5 include, for example, the articles Mr. Bozied wrote, or was in the process of writing, in support of Giarratano and critical of Plaintiffs and the USF administration. Documents responsive to Request No. 6 include Mr. Bozied's "We Support Coach G" website (which exists expressly to support Giarratano and attack Plaintiffs and the veracity of their allegations), his "We Support Coach G" social media postings, his communications with individuals about the website, and his notes from the many interviews he conducted to be posted on his website.

Again, there is no reasonable dispute about the relevance of these documents: they concern topics as central as the veracity of the Plaintiffs' allegations and the credibility of prior statements of adverse witnesses.

Mr. Bozied also has not, and cannot, carry his burden to demonstrate that the requested documents are disproportionate. Mr. Bozied's copied-and-pasted boilerplate objections are insufficient as a matter of law. *Bautista,* 2017 U.S. Dist. LEXIS 79752, at *14. And, for the reasons discussed above, such objections are also meritless. These are documents exclusively within Mr. Bozied's possession concerning highly relevant topics that he should be able to locate and provide to Plaintiffs with only modest effort. Mr. Bozied should be compelled to search for and produce documents in response to Request Nos. 5 and 6.

**IV.   Conclusion**

Mr. Bozied has attempted to evade his obligations for over six months. Absent a court order, it is clear he will continue to do so. Plaintiffs respectfully request that this

---

[27] Decl. of M. von Klemperer, **Ex. A.**

Court compel Mr. Bozied to conduct a diligent search for documents responsive to Requests 1-3 and 5-6 and produce them within fourteen (14) days of the Court's Order.

Dated: March 28, 2025, 2025                    Respectfully submitted,

                                               /s/ *Michael von Klemperer*
                                               **Michael von Klemperer**
                                               FEGAN SCOTT LLC
                                               1763 Columbia Road NW, Suite 100
                                               Washington, DC 20009
                                               Telephone: (202) 921-0002
                                               E-mail: mike@feganscott.com
                                               Attorney for Plaintiffs